IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
J.L. MOORE, INC.,                                       : CASE NO. 1:10 CV 02819
                                                        :
                                       Plaintiff,       : <u>MEMORANDUM OF OPINION AND</u>
                                                        : <u>ORDER</u>
                   -vs-                                 :
                                                        :
                                                        :
PATTY SETTIMO, et al,                                   :
                                       Defendants.      :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is a motion to stay proceedings pending arbitration filed by the defendants, Patty Settimo and SETTP, LLC. (Doc. 4). The plaintiff J.L. Moore, Inc., has filed an opposition, and the defendants have replied. (Doc. 6, 7). The question presented is whether the plaintiff's claims of defamation and tortious interference with a business relationship are subject to an arbitration clause contained in a construction contract between J.L. Moore and SETTP. For the reasons that follow, the Court holds that they are. The defendants' motion will therefore be granted.

**I. Background**

The plaintiff J.L. Moore, Inc., ("J.L Moore") is a general contractor, which had allegedly maintained a good business relationship with non-party Arby's of Middleburg Heights, Ohio ("Arby's"), a restaurant chain. (Doc. 1-1, ¶¶1, 6). The plaintiff states that Arby's identified J.L. Moore as a preferred contractor and had previously referred J.L.

Moore's contracting services to Arby's franchisees. (Doc. 1-1, ¶6). J.L. Moore maintains that it has successfully completed the construction of four Arby's restaurants for Arby's or its franchisees. (Doc. 1-1, ¶6).

The defendant SETTP is an Arby's franchisee, and defendant Patty Settimo is SETTP's managing member. (Doc. 4, p. 2-3). In the spring of 2009, SETTP and plaintiff J.L. Moore entered a construction contract, in which J.L. Moore agreed to build an Arby's restaurant, in Yorktown, Virginia. (Doc. 1-1, ¶5). Before the project could be completed, however, a dispute arose as to the parties' obligations under the contract. It appears J.L. Moore and SETTP did not agree on the contract amount, the completion date, certain extras, various change orders, and other modifications to the contract. (Doc. 6, p. 1). Hoping to resolve their differences, J.L. Moore initiated arbitration proceedings on 12 July 2010, pursuant to the arbitration clause contained in the contract. (Doc. 6, p. 1). That provision states:

> § 4.6 ARBITRATION
> § 4.6.1 Any claim arising out of or related to the Contract . . . shall . . . be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

(Doc. 4, p. 2).

After arbitration proceedings were initiated, J.L. Moore also filed the instant suit against SETTP and Ms. Settimo, alleging defamation and tortious interference with a business relationship.[1] (Doc. 1). In its complaint, J.L. Moore maintains that prior to entering the contract with SETTP, it enjoyed a good business relationship with Arby's.

---

[1] This case was originally filed in the Court of Common Pleas for Lorain County, Ohio. The defendants removed it pursuant to this Court's diversity jurisdiction on 13 December 2010.

2

Now, however, as a result of "false, defamatory, and tortious conduct" on the part of SETTP and Ms. Settimo, Arby's terminated its relationship with J.L. Moore. (Doc. 1-1, ¶¶7-8).

As to the defamation claim, the plaintiff alleges that in a series of oral and written communications to Arby's between 20 November 2009 and 17 March 2010, Ms. Settimo made a variety of false and damaging statements about J.L Moore. (Doc. 1-1, ¶¶9-19). Specifically, J.L. Moore alleges that Ms. Settimo told Arby's that J.L. Moore lied about its receipt of documents; that it treated government officials harshly; that J.L. Moore employees were argumentative, threatening and abusive; that Arby's should not continue to use J.L. Moore's services; that J.L. Moore failed miserably; that she was concerned for J.L. Moore's stability; that J.L. Moore was "petty," "had failed me," and that "the problem we've had all along is communication"; that J.L. Moore was holding up the job; and that the work had not been completed because of J.L. Moore's failures and "bogus" change orders. (Doc. 1-1, ¶¶9-19).

On its second count, tortious interference with a business relationship, J.L. Moore alleges that SETTP knew of the business relationship between J.L. Moore and Arby's and that SETTP intentionally interfered with it. (Doc. 1-1, ¶¶20-27). J.L. Moore contends that in February 2009, it was informed by an Arby's employee that it could not bid on any Arby's projects because the SETTP project made it "too hot." (Doc. 1-1, ¶25).

The defendants maintain that the plaintiff's defamation and tortious interference claims fall within the scope of the broadly worded arbitration clause contained in the parties' agreement. Because the plaintiff's claims are subject to arbitration, they argue,

3

the Court should stay this action pending arbitration.

### II. Law and Argument

The Federal Arbitration Act, 9 U.S.C. § 1 reflects a strong policy in favor of arbitration:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable ...

9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)(emphasis in original). "The court's role is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 479 (9th Cir.1991). Any doubts about the scope of arbitrable issues must be resolved in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614 (1985) (citing Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 22 (1983).

When faced with a motion to stay pending arbitration, this Court performs the following four-step analysis:

1) Determine whether the parties agreed to arbitrate;

2) Determine the scope of the agreement;

3) If federal statutory claims are involved, assess whether Congress intended those claims to be nonarbitrable; and

4) If only some of the claims are subject to arbitration, determine whether the

4

remaining claims should be stayed.

Fazio v. Lehman Bros., Inc., 340 F.3d 386, 392 (6th Cir.2003).

The parties in the present case do not dispute the existence of an agreement to arbitrate, and they present no federal claims. The only issue is whether the plaintiff's state law tort claims fall within the scope of the arbitration provision. J.L. Moore bears the burden of showing that they do not. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000).

Although J.L. Moore insists otherwise, the contractual language at issue here, which requires arbitration of "*any* claim" is broad enough to include common law tort claims, so long as they arise out of or are related to the contract. See Fazio v. Lehman Bros., Inc., 340 F.3d 386, 395 (6th Cir. 2003)("merely casting a complaint in tort does not mean that the arbitration provision does not apply"). Further, J.L. Moore has not directed the Court to any contract provision that would show an agreement to exclude this type of claim from the arbitration provision's broad reach. See Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 627 (6th Cir.2004)("only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators").

Whether J.L. Moore's tort claims are related to the contract depends on whether "the allegations underlying the claims 'touch matters' covered by the [agreement]." Fazio, 340 F.3d at 395 (quoting Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir.1987)). "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." Fazio, 340 F.3d at 395 (citing Ford v.

5

NYLCare Health Plans of Gulf Coast, Inc., 141 F.3d 243, 250-51 (5th Cir.1998)).

After considering the factual allegations underlying J.L. Moore's first cause of action, it is the Court's opinion that reference to the parties' contract or relationship would be unavoidable in this instance. To succeed on a defamation claim under Ohio law,[2] J.L. Moore must provide proof of a false and defamatory statement; an unprivileged publication of that statement to a third party; negligence by the publisher; and "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Akron-Canton Waste Oil v. Safety-Kleen Oil Servs., 81 Ohio App.3d 591, 601, 611 N.E.2d 955 (Ohio App.1992).

J.L. Moore would not get past the first element without referring to the contract, because a determination of whether some of the statements made by Ms. Settimo were false would require analysis as to whether J.L. Moore had performed as agreed under the contract. For instance, the veracity of Ms. Settimo's alleged statement that J.L. Moore had submitted "bogus" change order forms could not be assessed without a determination of what constituted a valid change order under the parties' agreement. Similarly, the alleged statement that J.L. Moore had "failed me" would require consideration of J.L. Moore's obligations under the contract and whether they were fulfilled as agreed.

Furthermore, the question of whether Ms. Settimo's alleged statements are

---

[2] A federal court sitting in diversity applies the substantive law, including choice of law rules, of the state in which it sits. E.g., Phelps v. McClellan, 30 F.3d 658, 661 (6th Cir.1994) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Ohio law presumes that the law of the place where injury occurred controls "unless another jurisdiction has a more significant relationship to the lawsuit." Morgan v. Biro Mfg. Co., Inc., 15 Ohio St.3d 339, 342, 474 N.E.2d 286 (1984). Neither party has challenged the presumption that Ohio law applies in this instance.

6

defamatory would undoubtedly "touch on" the parties' contract and relationship. To determine whether her statements are defamatory under Ohio law, rather than constitutionally protected opinion, the Court would apply a totality of the circumstances test and consider "the specific language used, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared." Harris v. Bornhorst, 513 F.3d 503, 522 (6th Cir. 2008). Certainly, any consideration of the general and broader contexts of Ms. Settimo's alleged statements would delve into the contractual relationship between J.L. Moore and SETTP.

In the same way, J.L. Moore cannot maintain its second cause of action without reference to the contract or relationship between it and SETTP. To maintain a tortious interference with a business relation claim J.L. Moore must prove that the defendants acted intentionally. Geo-Pro Serv., Inc. v. Solar Testing Laboratories, Inc., 145 Ohio App.3d 514, 525, 763 N.E.2d 664 (2001). Intent will be inferred in those instances where an injury is substantially certain to occur in light of the surrounding circumstances. Gearing v. Nationwide Ins. Co., 76 Ohio St.3d 34, 36, 665 N.E.2d 1115, 1117 (1996). In this instance, consideration of the surrounding circumstances would require reference to the contractual relationship between J.L. Moore and SETTP.

It is again worth noting that J.L. Moore has the burden to demonstrate that its claims do not fall within the scope of the arbitration provision. Because it has not demonstrated that "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," the Court must recognize the presumption of arbitrability and resolve any doubts in favor of arbitration. Masco, 382 F.3d at 627 (quoting Highlands Wellmont Health, 350 F.3d at 576-77).

7

Next, J.L. Moore urges the Court to deny the defendants' motion as to Ms. Settimo, because she has not in any personal capacity agreed to the terms of the contract. According to J.L. Moore, Ms. Settimo cannot hold it to the terms of a contract she did not sign. The defendants, however, maintain that even though Ms. Settimo was not a signatory to the contract, she may nonetheless compel J.L. Moore to arbitrate its claims, under a theory of equitable estoppel.

The Sixth Circuit has approved the proposition that a signatory may be estopped "from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." See Javitch v. First Union Sec., Inc., 315 F.3d 619, 629 (6th Cir. 2003). "[A]pplication of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999).

In the present case, J.L. Moore has joined SETTP under a theory of respondeat superior, and the facts underlying J.L. Moore's claims against SETTP are inseparable from the claims against Ms. Settimo. As such, the alleged misconduct of nonsignatory Ms. Settimo is substantially interdependent with that of signatory SETTP. The Court accordingly holds that J.L. Moore should be estopped from avoiding arbitration of its claims against Ms. Settimo.

As a final matter, the Court notes that the defendants have requested a stay of this matter, rather than a dismissal. Indeed, the Federal Arbitration Act states that the

8

Court,

> upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3 (emphasis added). While there is authority counseling for dismissal, where, as here, "all the issues raised in district court must be submitted to arbitration," Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir.1992), absent clear guidance from the Sixth Circuit, the Court will stay this action pursuant to the express language of the FAA.

### III. Conclusion

For the reasons stated above, the defendants' motion is granted, and this action is stayed pending arbitration.

IT IS SO ORDERED.

   /s/ Lesley Wells  
UNITED STATES DISTRICT JUDGE

Date: 20 January 2011